MATTER OF AIRCRAFT N-3281-Z

In Fine Proceedings

SPM-10/2.81

*Decided by Board October 29, 1969*

(1) It is no defense to imposition of fine on aircraft's owner for violation of section 239 of the Immigration and Nationality Act that the owner of the aircraft may not have been the pilot of the plane at the time the violation occurred, since the statute provides that the penalty shall be a lien upon the aircraft.

(2) Mitigation of fine is not warranted since appellant was uncooperative with Service officers throughout and after the aircraft had been properly made the subject of seizure, despite notice thereof and instructions not to interfere with the seizure proceedings, appellant took the plane and has been using it for his private purposes.

IN RE: Piper Cub Aircraft N-3281-Z, which arrived in the United States at an unknown time and place from Canada on or about January 27, 1969. Person involved: Mike Meier—owner.

BASIS FOR FINE: Act of 1952—Section 239 (8 U.S.C. 1229), and 8 CFR 239.2.

This appeal is directed to an administrative penalty of $500 which the Acting District Director at St. Paul has ordered imposed on the aircraft's owner for a violation of the statute and the related regulations, as follows: failure to land at a designated airport; failure to give advance notice of arrival; and discharging or permitting departure of passengers or crew without permission of an immigration officer. The appeal will be dismissed.

A Royal Canadian Mounted Police report dated January 28, 1969, sets forth that late the preceding afternoon a Canadian citizen named Collins telephonically informed the reporter that he had just seen an aircraft bearing the number "N-3281-Z," an American Certificate of Registration number, make a landing in Canada while engaged in illegally shooting foxes. Appropriate federal records show Mike Meier, a United States citizen, to be its registered owner, and he admits that he is the owner of the aircraft.

On June 9, 1969, two Collins brothers, Canadian citizens, Douglas Lloyd and Jan Earl, executed affidavits before a border patrol officer of the Immigration Service, in the presence of a Royal Canadian Mounted Police Officer, concerning the aforementioned Royal Canadian Mounted Police report. Both brothers stated that they saw the plane land in Canada at a point about 10 miles north of the international boundary. One of the affiants walked to the aircraft; talked to its pilot; assisted in the plane's takeoff; and then wrote its number, "N–3281–Z," down on a piece of paper, which he gave to his brother. The latter, the other affiant, who had remained in a truck about one quarter a mile away from the aircraft, noted its number when it circled low over him in taking off; compared his number with the one written down by his brother; found that the number tallied; and then reported the matter to the Royal Canadian Mounted Police by telephone.

On July 11, 1969, Mike Meier submitted a written statement covering a fox hunting trip on February 21, 1969. He then stated, and is corroborated by a United States Customs officer in this respect, that the trip was confined to United States territory. Apparently, Mr. Meier is inferring that this is the trip to which the testimony of the Collins brothers related. Mr. Meier denies that his aircraft was in Canada on January 27, 1969. However, appropriate federal records show no lawful United States arrival of his aircraft on or after January 27, 1969.

In our opinion, the foregoing evidence clearly and convincingly establishes that a violation of the statute here under consideration, and its related regulations, occurred. We think the testimony of the Collins brothers that the aircraft was in Canada far outweighs Mr. Meier's denial of this fact. Therefore, we hold that the Acting District Director has properly ordered a fine imposed in this instance.

It is no defense to imposition to the fine that Mr. Meier may not have been the pilot of the aircraft. Concomitantly, it is immaterial that the description of the aircraft's pilot furnished by one of the Collins brothers may not have been related to Mr. Meier. The reason, simply stated, is that the statute provides that the penalty specified therein shall be a lien upon the aircraft. Hence, even although not a party to the violation, Mr. Meier must satisfy the lien on the plane, and upon failure to do so may be liable for the fine in United States courts as provided by the statute. In other words, the statute marks the owner of the aircraft as well the pilot thereof properly the subject of these proceedings. The

law does not require the Service to look to the pilot in preference to the owner.

Under the circumstances outlined, we do not feel that the five-month gap between the Royal Canadian Mounted Police report and the date of the affidavits furnished by the Collins brothers is in any way fatal. The Royal Canadian Police report would seem to cover any deficiency in this respect, if there is any concern with the question of a reasonably contemporaneous identification of the aircraft. From a practical standpoint, also, it obviously took a while for the Royal Canadian Police report to get to the Service; tracing the plane's owner consumed a good bit of time, as indicated by the record; and winter conditions probably hindered travel to Canada by a Service officer to interview the Collins brothers.

As to the remaining question of mitigation, we do not think that any such relief is warranted in these premises. The record reflects clearly that the appellant was uncooperative with Service officers throughout. In addition, after the aircraft had been properly made the subject of seizure, Mr. Meier, despite notice thereof and instructions not to interfere with the seizure proceedings, took the plane and has been using it for his private purposes. Under these circumstances, no reduction in the amount of the penalty is warranted.

Our decision with respect to mitigation is made without regard to the possibility that in the course of the violation here under consideration the pilot and/or owner may have been engaged in poaching in Canada and importing wild mammals into the United States in violation of law. Accordingly, and in view of the foregoing, no change will be made in the Acting District Director's decision of August 5, 1969.

ORDER: It is ordered that the appeal be and the same is hereby dismissed.